Good morning, your honors. Jerry Nielsen on behalf of Southern Farm Bureau in both cases, which appears before you as the fiscal agent and fiduciary of the United States. Your honors, what is the starting point of a district judge's analysis of an NFIP case? The starting point is the act, the statutory scheme designed by Congress. Because in OPM v. Richmond, the U.S. Supreme Court said not one dollar is supposed to come out of the federal treasury by the order of a federal district judge except by what has been sanctioned by Congress. So how do we accomplish that objective? We start with the act, and there's two statutes that frame what a district judge would do here. The first is 42 U.S.C. section 4013, where Congress delegates to FEMA exclusively rulemaking authority as to who is eligible under this act. This case presents one of the hardest problems facing Congress and FEMA over the past 40 years. What do you do with people like Ms. Stoner and Mr. McCarty who come up at the very last second and want to buy a flood policy after they see the rain or the hurricane or the snow melt or whatever, and unlike their neighbors that are buying flood policies and paying when the sky is blue, they want to pay at the last second? What do you do with those people? There's got to be a rule, and Congress has rules and FEMA has rules. Congress says one rule is you've got to have a 30-day waiting period unless you're buying your policy in connection with the loan, and the federal regulations are explicit. You peg that date at the actual loan closing. There's also within the flood policy, which is a federal regulation, the flood-in-progress exclusion, which, and even I say it wrong sometimes, and I see adjusters write it up wrong, there is the loss-in-progress principle of standard insurance law that covers all lines of insurance, and then there's the flood-in-progress exclusion of the NFIP, which says that the program does not cover a loss arising directly or indirectly from a flood that was in progress at the inception date of the policy. What is a flood-in-progress? Is there some agency, the government, that says, yes, this is a flood? Yes. Is that what drives the line? Correct. Counsel for the plaintiff and the district judge view this as some fact question. Do I believe these people? And that is the crux of what you have to decide. Does every United States district court judge all over the country just get to make their own gut check? Well, I like this person. I believe this person, so I'm going to take a federal treasury check and give it to them. Or are there the standards that the national government has to every judge in the country has to follow? And that's the crux of what you have to decide. Is this actually a fact question where these witnesses' credibility is an issue? Or did FEMA make a public policy call that says, okay, this is the standard we're going to have for everybody that wants to pop up at the last second, and here's our call? Can you explain the process for determining when the flood starts? Because I understand in these two cases, we've got slightly different approaches to when the flood started. So does FEMA come in afterwards and say, well, that flood there, that was coming in at X date? How is that determined? Okay. You actually have two different floods happening at the exact same time. The one that FEMA was dealing with is the one coming from the northern tier of the country, the excessive snow melt from that winter. FEMA, working off of flood gauges, made a determination of whether or not there was flooding, using their definition of flood, in every county that had flood in the upper reaches of the Mississippi River and going up into the Missouri River. And that's an after the fact determination. After the fact, and they made that determination that there was flooding in those counties. And then you also had the flood that Arkansas was dealing with, which was the excessive rainfall, which the governor had 57 of 75 counties was a and these two particular counties where these people live are right at the cup where those two sets of floods were coming down the lower Mississippi. So FEMA says as an objective point, if you're one of these people that is coming in at the last second, here's going to be the rule. If there is a flood in your community, which is either your county or your city or your village, whatever, if any of those are in flood before the inception date of your policy, you're going to have coverage for that flood event. It's an objective rule. The insured may not know that for a while. And Merrill and Heckler all say the subjective knowledge of the insured in a federal insurance program is irrelevant. It is an objective federal program. Otherwise, a person who's willing to come into court and swear, oh, I didn't know something, they're going to get a federal check. A person who says, you know, I can't go into court and swear I didn't know about this flood. They're out. And that's not fair. I mean, we're borderline on morally reprehensible behavior coming in and buying an insurance policy after the whole state is in flood. Now FEMA's got to make a call. Let's go to the non-waiver agreement, because if I'm reading this right, if the district court erred on this non-waiver agreement and corporation, then we don't even get to all these issues you're talking about. Let's talk about that a minute. Okay. You start with another statute, 4019, where Congress said to FEMA, you make the rules for claims adjustment. They have made those rules. You have to have a proof of loss. There is an exception to the proof of loss, 7J9 in the policy. And it's paired with 7D, which says only the administrator can waive the rules and it must be in writing. So we must find a written waiver by the administrator. The law is clear. Every appellate court that's looked at this has said the companies cannot waive anything. The only exception is this 7J9. And what it says is, at our sole option, we can accept the adjuster's report in lieu of a proof of loss, but that adjuster's report will contain a description of your damages and you must sign the adjuster's report. And FEMA's manual, which based on the arrangement we have to follow, and the U.S. Third Circuit agreed and several courts have agreed, no one's disagreed, it's got to be a claim under $7,500. And if that is all interpreted, that any time a claim, now these are claims for $50,000 and $92,000. If we can waive through our contact these claims, then we can waive anything. Anything at all. So you don't have a non-waiver rule. There's also a different issue here. The document is a non-waiver agreement. That happens thousands of times every day in this country where an insurance company sends out an adjuster and that adjuster hands the person a non-waiver agreement, says look, there's something squirrely here, we're not certain about this, we don't know if you have coverage, so sign this waiver that you know, this non-waiver, that we're investigating your claim, we want to figure out the facts on the ground, but we're not waiving any rights. And then the district judge says, well that's a waiver somehow. I challenge my opponent to show you any case, state or federal, anywhere in the United States, anytime, where any judge has ever held that a non-waiver agreement is somehow a waiver. With all respect, it makes absolutely no sense. We're informing the insured we haven't waived anything, and the district judge rules that's a waiver. Well I think what, and you've covered it probably, but I think what the other side would say and what the district court is saying is, you don't look at those cases, it's looking at your own regulations. Your own regulations say that they can waive it again, and you know, you say well then you've got to sign the final report and it's got to be less than $7,500. Right. But I don't think they're arguing case law, they're arguing their own, the language of their own government regulations. Okay, well looking at the holdings of the Eighth Circuit in Mancini, Gunter, and Dixon, this court agrees with every other circuit in the land that the SFIP's conditions must be strictly construed and enforced by the courts on a nationally uniform basis. That there's a compelling governmental interest in assuring uniformity of decision in cases involving the NFIP so everybody gets the same deal. This provision, Article 7J9, is explicit. The insurance company's option, and we testified repeatedly, we did not exercise this option, that it will contain, the adjuster's report contains your damages. The damages were never written up. The adjuster's report has zero on every line. So if their claim is based on the adjuster's report, they should get zero. And you must sign the adjuster's report, not something else submitted with it. You must sign the adjuster's report is what it said, and it's not signed. And then the manual adds the additional clarifying feature that this option by the insurance company may only be exercised in claims under $7,500. But we don't have the lawful right to waive it, and we don't have the lawful right to exercise this exception for tiny claims unless it's under $7,500 and it didn't happen here. I assume you argued this to Judge Wilson. Yes, repeatedly. What was his, you know, I read, I read his, I read the transcript, because I guess he did his opinion in the transcript, but what was your understanding of his response to that? That you, you did it. That the judge was just of a mindset that this did happen, and so let's move on. Motions for summary judgment were filed, and the court just ruled that you can, um, you can do this, and I rule that you did. And again, is this a fact question? Does every district judge in the United States get to do this? And I have judges ask me this question. It's an important question. Mr. Nielsen, what if I just believe that, in short? What if I just have this gut sense that they're honest? Well, is that enough for a federal judge in a federal insurance program to award money from the federal treasury? And I say absolutely not. Believable, well-appearing people don't get more money than people who come across less credibly. FEMA's got objective standards. The Supreme Court is most clear on this. It doesn't turn on whether or not you like the insured. What these people did, as Ms. Stoner put it in her letter to FEMA, I found a loophole, okay, and I'm taking advantage of it. Well, that's fine. You do get to take advantage of loopholes in the law, but you better read everything if you're going to play hardball like that. Is there anything in the record on why these two people did not submit proof of law statements? There must be some form. Yes. There's nothing in the record as to why they didn't do that? There is nothing in the record as to why they didn't. They didn't. Our situations were issued within the first 60 days, so they were on written notice from the companies that their claims were being denied before the running of the 60 days, so they had time to get those proofs of laws in. It is the standard practice of the NFIP going back decades that you have a finite number of adjusters in a disaster. Once that adjuster reaches a situation where it is not a payable claim, they shut it down and move on to the next victim. We don't sit there writing up covered damages. If that person disagrees with the claim, it is incumbent upon them to perfect their proof of loss, get a detailed estimate together, and get that in and preserve their claim for judicial review. How difficult is that? It happens all the time. You've got public adjusters out there. You have legal counsel. You've got people that do it on their own. There's no need to fill out the particular FEMA form, though you can print it right off of their website. It takes a little bit of time. You figure it out. And as the courts have ruled, the proof of loss form itself must contain all of the information that's laid out in the policy. In the FEMA form, you can just track it. And then it does require that you have detailed line item estimates of what are your damages. You can't just come in with a lump sum estimate. I want $80,000. But it's done all of the time. And there are court cases about people coming and saying, well, it's difficult, or it's hard, or I didn't have enough time. Well, but the courts have said that's all true. But that is what the rule requires. And if they run afoul of that rule, FEMA stands ready, willing, and able through the administrator to waive the rules if somebody messes up. And it is FEMA's decades-old practice that if somebody has run afoul of the rules, but is owed federal dollars under this program and hasn't done anything in bad faith, more likely than not, I'm not speaking for FEMA, just normal practice, a waiver will be granted. Well, just out of curiosity, does this so complicated, never having done one, that a layperson can do it? Or do you have to go out and find a lawyer? Or people do it on their own all the time. It is not the case. And FEMA's even removed the requirement. It used to be that you had to go to a notary and have it sworn, the proof of loss sworn, in the presence of a notary. And a couple of years back, FEMA said, now, wait a minute, there's a federal statute for, like, your tax return. If FEMA puts the magic language, sworn under penalty of perjury, and has the person sign and date it, Congress has deemed that in documents submitted for federal funds or to a federal agency, that is a swearing. So you don't even have to go to a notary to have it done. So you can fill the thing out, sign it, attach all your documents, and mail it in. And it happens all the time. And that's been the rule in this program for decades. I've been doing this for 30 years. The rule was in place before I showed up. That's always been our rule. It's never been changed. And the courts have uniformly, always, and for, after Hurricane Katrina, 10 cases went to the U.S. Fifth Circuit on this rule. People, all kinds of different, trying to get around this rule with every imaginable argument. Very creative plaintiff's lawyers are. That's their job. 10 times the Fifth Circuit said no. Dealing with Katrina, they said no. It's a strict rule because there is a safety valve. You've got the administrative review process through FEMA. If you are honestly, actually owed money under the program, and all you did was run afoul of the proof of law. I assume that you're going back to the beginning of your argument. The government's encouraging buying these things ahead of time and collecting premiums over time, rather than racing in at the last minute. I mean, that's, I suppose, the public policy argument of it? Or one of the public policy arguments? The possibility that, and I'm using into my rebuttal time, FEMA's a federal agency. They've got no incentive to tell someone no. Their incentive is to treat everyone equally. And that's their main objective. They've been dealing with people doing this for decades. And so they work real hard to have a system that's purely objective, that works across the board, both in terms of the eligibility issue and the claims presentment piece. I'm not talking about FEMA. I'm talking, you were talking about Congress and what Congress was trying to do was to avoid people coming in at the last minute. And I assume that's, there he is, is you want, Congress wants people buying these in advance, they want the money, they don't want you coming in and making a big windfall, killing for a small premium. Correct. Because if you encourage and enable people to buy their policies at the last second, then nobody's going to pay premiums year after year. A $20 billion deficit in the program becomes a $50 billion deficit. And that's kind of follows in the Supreme Court cases and then also, I guess, our case, Judge Arnold's case. Yes. If I may reserve what limited time I have for rebuttal. Okay. Thank you. Thank you, Your Honors. Morning, Mr. Ballard. Thank you. May it please the Court, my name is Grant Ballard and I represent the Appalachians, Mike McCarty and Miss Jenny Lee Stoner. I'll just start out by saying simply, this is not a waiver case. This is a case about holding Farm Bureau to the terms of the contract that they enter into with the citizens of East Arkansas. So this is no waiver case. First off, I'd also like to point out that the Appalachians didn't wait to the last minute to get any insurance. For example, Mr. McCarty had his insurance policy in place approximately one month before the floodwaters reached his property. In addition, Miss Stoner, she obtained her insurance policy when the floodwaters were miles away from her property. So it is disingenuous for Farm Bureau to state that our clients waited until the last minute to take advantage of this program because Farm Bureau offered not one witness to contradict the testimony of our clients that there was no flooding in their area. So what this case is about is holding Farm Bureau to the terms of their policy. What Farm Bureau seeks to turn this case into is an opportunity to hide behind FEMA. When in fact, FEMA, which issues these date of loss bulletins, whatever they mean, however they're determined, FEMA has specifically sent memos, and they're in the record, W11110, to Farm Bureau and other rights to your own carriers saying the facts for flooding progress must be determined on an individual basis. That's a factual question. FEMA has specifically said two rights to your own carriers, such as Farm Bureau, that don't rely on an administrative declaration. But what do they do? They told Judge Wilson in both trials, at the beginning of the trial, it's in the record, we don't have any evidence there was a flood in progress when these policies were obtained. Instead, Farm Bureau says FEMA made the decision. Well, FEMA never made the decision. Like I said at the beginning, what this case is about is holding Farm Bureau to the terms of its policy. The policy defines flood, and it does say a flood in progress will not be covered. But what is a flood? A flood is a time in your community when two or more acres or two or more properties are inundated with water. April 20th. Ed, whether you're right or not on that, the question, the initial question is whether you proof of loss. What's your argument there? My argument is simply that, yes, there was an alternative to the proof of loss filed in accordance with the strict language of the policy terms, as this Court recognized in Mancini. What happened factually, very briefly, and this is best illustrated in the testimony of Jim Myers, who was the adjuster handling these claims in the McCarty trial, was that Jim Myers got an independent adjuster, hired an independent adjuster for these claims, Colonial Claims Service. He gave them a non-waiver, which says the purpose of signing this non-waiver, I believe it says that the sole, the sole intent, sole object of intent is to provide for the determination of value and amount of loss and damage. So our client signed off on this investigation of their loss and damage. An adjuster's report was completed, and it was sent back to Jim Myers, who processed these claims. And it's important to for failure to submit a proof of loss. That's not why they were denied. It was the flood in progress issue. So I don't believe that the District Court erred at all in the factual finding that, yes, Farm Bureau accepted an adjuster's report in lieu of a proof of loss. The reason was the adjuster's report itself was not signed, correct? That's correct. The best way I can say is that the best way that the record comes together, and it's not as clear as it could be in the record, is that the adjuster sent back the report. They also sent back the non-waiver, which was signed. I guess it's a separate document. Judge Wilson, I believe, made the finding that it specifically referenced an adjuster's report, so it could be considered a portion or consolidated with the adjuster's report. Well, we have Mancini and Dixon that say that all these regs and rules have to be strictly construed. And then I'd like you to explain that. It sounds like you're arguing not a but then the other thing is, how do you distinguish, and I don't know how you pronounce it, Swapese versus Omaha property, whatever that is. But it's a Third Circuit case, which seems awfully close here, that if we ruled in your favor, that it would create a circuit split. Well, first off, I would say that I'm arguing for a strict construction. I think Swapese made a leap, an impermissible leap. And Swapese was a waiver case. It wasn't strictly confined to this idea of an adjuster's report was accepted as a proof of loss, like our case was. But Swapese made the decision that the acceptance of the adjuster's report only was allowed to sums under $7,500. I don't believe that's a correct interpretation of the law. Moreover, if FEMA interprets the regulation to stand for that proposition, it should be disregarded by this court, because agency interpretations of their own regulations are only acceptable when they don't conflict with the statute. The authorizing statute, we've got a policy that's a contract between Farm Bureau, Jenny Stoner, and Mike McCarty. It doesn't have anything to do with the $7,500 limit. It's not there. So if Farm Bureau authorized payment that's outside the terms of their agreement with FEMA, that's their own problem. This is about a policy and a contract between two private parties. I don't think... Go ahead. Well, go ahead. But the question I have that came up before I forget was you say that Farm Bureau authorized the payment. And when you say that, what are you relying on? A poor choice of words, but what I will say is they processed the claim without a proof of loss. Jim Myers made it clear in his testimony that he accepted the damage results. Well, do you have any case law or regulation or statute that says Farm Bureau has authority to waive anything by its actions or inactions? I do not. There is some support for the proposition that instead of this being a waiver in the Pissaravish Ninth Circuit line of cases, instead of this very distinct factual situation being a waiver, this is instead an insurance company granting permission to use an alternative policy procedure. The adjuster's report is not a waiver of the proof of loss requirement. It's just an alternative procedure. And I'll also say the only reason the adjuster's report didn't get signed, and this came out in testimony, is it was never provided to our clients. Well, do you understand the case law seemed to indicate that this is not an insurance company, and so some of those waiver rules apply. That's the government. And the Supreme Court has said you don't get these waivers, you don't get any money out of the Federal Treasury without strict compliance with the letter of the law. I mean, that's what we're all living with. So there is a difference between government money versus insurance money. So what authority do you have that says that farm bureaus acting as an agent for the federal government can do whatever you want to call it, waiver or authorize or argue one exception and not another, and therefore waive the second one? The policy itself says that the insurance policy should be construed in accordance with traditional principles of federal common law. It says it itself. And for example, we've said that we've made the argument to a trial, and it's never really, I don't think it's specifically ruled on, even if our clients did not sign the adjuster's report. The doctrine of material breach is applicable in flood insurance cases. A couple courts have struggled with it, most recently in 2008 in Howell v. State Farm, where I believe the district court recognized that first material breach argument is applicable. In that case, they found there was not a first material breach issue because the insured basically waived and continued to perform. In this case, I would go so far as to say our clients were prevented from signing the adjuster's report because even after they signed this agreement, which Judge Wilson made the factual finding could be incorporated or considered incorporated in the adjuster's report, even after they signed off and agreed with Farm Bureau that the adjuster will do this damage estimate, the insurance company didn't send it. And in the Pasarevich line of cases in the Ninth Circuit, the court made clear that the prevention doctrine is also applicable as a federal common law doctrine, and an insured cannot be required to sign something that is not provided to them. What about the availability of a proof of loss form on the Internet website? There's no indication that your clients did that independently, right? That is correct. I think it's important to remember that our clients' claims were denied before the proof of loss was due, and I would say that would excuse any further performance, but I'd also say they had already signed an agreement, a non-waiver, that seems explicitly to me to say that the adjusters are going to establish the loss and the damage. Now, there is some dispute as to exactly what the adjuster's report show, and I know Farm Bureau doesn't want to say they show damage and they show loss, but read the testimony. The Co-Counsel for the Defense went so far as to withdraw that testimony themselves. They did a reasonable, and Judge Wilson also withdrew this testimony. Brian Hines, the adjuster for Colonial Claims, he did a reasonable estimate of the property value. Mike McCarty was owed actual cash value under his policy. They put in a sum for actual cash value. In his case, the adjusters did. Replacement value for Jenny Stoner, there's a number in there, and now Farm Bureau tries to step back, so that's not an actual number, but when you read the adjuster's testimony, you see that they made an effort to adjust this loss. Lane, what's your response to the argument that a non-waiver agreement cannot waive something? In other words, it seems kind of an oxymoron. It does if you just look at the title of the agreement, but when you get into the meat of the document and you see what it says, what the agreement actually is, it's really not a non-waiver. A portion of it's a non-waiver, I guess you'd say, but I've never seen a non-waiver before that says the people signing the document are coming to an agreement for an investigation of the cause of loss and the amount of damage. This is not a normal non-waiver agreement, and I guess Jim Myers, the adjuster at Farm Bureau, might have drafted these, but he did make clear in his testimony, especially in the McCarty trial, that he sent those with colonial claims to get them signed, and they did, and they came back, just like the adjuster's report. So we've got a situation here that hasn't been, I mean, I think it's definitely a case of first impression. The last time a similar case came up to the Eighth Circuit was Mancini, and the footnotes, it was recognized, you know, there is the possibility that an adjuster's report could be accepted. We've got one now, and then we've also got equitable arguments that are applicable because it's federal common law. Farm Bureau was in material breach of these contracts when they denied them. They were in the first material breach. FEMA has told Farm Bureau, it's in the record, that you're supposed to make an independent investigation of these claims. Farm Bureau unilaterally denied these claims. Moreover, Mike McCarty had a policy before anybody says there was a flood. The earliest date that Farm Bureau argued there was a flood was April 26th in Deshea County, Arkansas. He's got a policy dated April 25th, and then after he files a loss, Farm Bureau unilaterally cancels that and changes the date of coverage. What about, do you disagree then that the coverage starts with the closing date on the loan? Do you disagree with that premise? I do disagree with that, and we brought that up in the plaintiff's exhibit. In the testimony of Darren Cooper in the McCarty trial, I think we disproved that theory. There's an exception, and Farm Bureau didn't realize it at the time, but they had the date right the first time. What's the exception? The exception is when your lender requires you to have flood insurance prior to obtaining a loan, and that's exactly what happened in Mike McCarty's case. He couldn't get the loan until they had the flood insurance. So in that case, and I think it's Exhibit 34, Plaintiff's 34, I got it here. Yeah, Plaintiff's Exhibit 34 in McCarty. Coverage is effective, no waiting period in connection with lender requirement is the title on Plaintiff's 34. The coverage is effective upon the completion of an application and the presentment of payment of premium. So on April 25th, he had flood insurance coverage prior to anybody's allegations of FEMA. Darren Cooper became evident in that trial that Darren Cooper made a mistake, and he unilaterally repudiated the contract, which is another equitable argument we have against this proof of loss theory. He moved the date to the loan closing. Now, in Jenny Stoner's case, yes, the loan closing is the right date, but not in Mike McCarty's case. Farm Bureau messed up, had no explanation, read my cross of Darren Cooper, had no explanation for why he did that. I'll say again that I'm, I shouldn't have to say it, we shouldn't have to stand up here and testify as to the, as to the moral bearing of our clients. Jenny Lee Stoner's an elderly woman, former wife of the county judge in Phillips County, Mike McCarty, great guy, didn't run here at the last second. Y'all know that's not correct. Don't, don't buy that. Had it, there's no flood in progress case in this country where a flood was in progress, and you, and your house doesn't get flooded for a month, not a one. The cases cited by and continually relied upon by the defendant, most of them are day before, same day flooding. People did run in there at the last second and try to get flood insurance. That's not the fact here. That's not the case here. I want to ask you about that $7,500 limit for the alternative proof of loss. Why do you think that, is your argument that that's in contradiction to the statute and that's why we shouldn't defer to that? That's one of them. I'd also, I'd also just recommend sit down and read it. It's not in the policy. The $7,500 limit is not in the policy, the terms of insurance. When you say policy, are you talking about your client's policy, or are you talking about the flood insurance policy? The actual flood insurance policy, same thing. The same contract for insurance. There's no $7,500 limit in there. They pull that $7,500 limit out of a claims manual, which is, I guess, an interpretation of how FEMA wants to administer the policy. That, that is distinct, and that $7,500 limit, I'd also point out, doesn't even reference this provision of the policy that we're relying on. The article seven provision, it's not mentioning the $7,500 limit. Again, I'd also like to reiterate my position that this is not a waiver case. Waiver, I do believe that, that they can waive proof of loss requirements for claims under $7,500. I believe Farm Bureau can make that waiver, but this is not that situation. They don't, they still have proof of loss because they've got an adjuster's report. I think that the more you dig, the more you read these claims manuals, these FEMA memos, the policy itself, it becomes evident that the smoke and mirrors can be seen through here. What about the, the reg that says, at our option, we may accept the adjuster's report of the loss instead of your proof of loss? Of course, it goes on to say you're signing it, you didn't sign it, but it says, at our option, we may. What evidence do you have that they exercise that option? The testimony of Jim Mize, the factual finding of the district court judge, was they exercise the option. Jim Mize took those adjuster's reports, he said he relied on them for damages, for amount of loss. You can go back to even the deposition excerpts attached to our summary judgment motions. Jim Mize used those and processed, started processing those claims, relied on the adjuster's reports alone for the denial too, as well. Well, who's, who has the Farm Bureau? That's the we, and I think the Pasarevich case line, line case, that, is that the our in it, in the regulation? I believe that it's the insurance company, the insurance provider, that's who the contract is between, it's between Farm Bureau and your private insurance, you're private insured. FEMA's not a party to this contract, and there have been some cases, some district court cases that have recognized this as kind of a dicey situation, where you can, where the right to your own carrier can find itself in FEMA guideline, but not in violation of the contract, or vice versa. It doesn't matter to me if, if Farm Bureau violates its agreement with FEMA. It does bother me if Farm Bureau violates the contract it has with our clients. And you say that the non-waiver agreement did not preclude waiver of the proof of loss? I, yes, yes, your honor, and although I don't think it's really a waiver, I, I think it's an, an exercise of a policy alternative to accept the Jester's report. And material breach doctrine would excuse any non-performance of the proof of loss requirement. In my mind, under the case law, I, I, I know that hasn't been argued a whole lot of times, but it has been recognized to be applicable to SFIP cases, flood insurance policy cases. So we've got a very strong, very strong material breach argument. They took, Jim Mize, the Jester, admitted under cross, indirect. Farm Bureau took no true investigation of this case. They didn't, they didn't investigate when the flood started. They just deferred to the FEMA bulletins. FEMA bulletins themselves say that that's not acceptable. W11110. That's, that's the, that's the crux of the argument, I guess. Mike McCarty and Jenny Stoner asked, asked this court to uphold two factual determinations by the district court judge. First, there was not a flood in progress. Again, the burden is on the defendant under the common law anyway, but they didn't present one evidence of flooding in our client's area. Second, the district court made a factual finding that the Jester, Jim Mize, accepted the proof of loss in lieu of the formal proof of loss requirement. With that said, I appreciate your time. Is there any agency, government or otherwise, or an insurance company or insurance company representatives that have the right to make these determinations? Or who's really in charge of determining when a flood is in progress? The National Weather Bureau, FEMA, Department of Agriculture? The policy controls, it's when two or more acres of water, that is defined clearly in the policy, two or more acres of water in your community, or two or more acres of land, excuse me, in your community are flooded. And FEMA has said itself that the policy terms control and administrative declarations and flood gauges are not controlling over when a flood starts. It has to be made on an individual basis. It's absurd that we hear the defense come up here and say, well, FEMA makes a decision. FEMA said in writing that we don't make the decision, the policy controls. It's a factual question for the judge. And the judge issued his factual determination in our favor. We ask that you uphold that and you hold Farm Bureau to their clients. Okay, thank you. Thank you. Okay, Mr. Nielsen, I think you have about two and a half minutes. Your Honors, as we unfortunately needed to say in our reply brief, the plaintiff's counsel takes some severe liberties with the record. And we would ask that the court be very careful with what counsel is saying with the record has. Just as to the flood in progress, every document any record without objection. You've got all kinds of documentation, both from the governor of Arkansas for the Arkansas flood and from FEMA as to the national flood going on at the exact same time. You've got testimony, for instance, in the Stoner case that her son was building a six-foot berm around the house four days before they bought the policy and she moved out with all of her contents two days after. I think that's significant evidence they knew a flood was coming. As to the evaluation of the risk, the adjuster is required to do an evaluation of the property. What is its value? That's not its damage. Counsel wants to keep doing this, a shell game. The adjuster's report, 7J9, says the adjuster's report will include information about your loss and the damages you sustained. The adjuster's report here has zero for every one of those numbers. The separate valuation of what is the house worth, so we can figure out if the right amount of insurance is being purchased, is in there as well. Those are two separate documents. This is a federal insurance program. This isn't for counsel to come in and just play word games. The loan date controls, regardless of what he was saying about how you get your loan or why you get your loan, the trigger date for eligibility is when the loan closes. These adjusters did not waive anything. They did not accept. They did not exercise. There's no such testimony. If this federal insurance program is going to work, it's got to work based on positive law. And the record is replete, both in terms of the governor's information, FEMA's information. They didn't come in with evidence to rebut FEMA's finding, hey, there was no flooding in our county. You are wrong, FEMA. What they came back with was, I didn't see any. I didn't subjectively know that it was going to get to my house. If that's the standard, then they do win. If it's an objective standard based upon FEMA's nationally known rule, I win. Could they have presented the testimony that, no, there was no flooding in my county? Absolutely. And that would have been acceptable fact finding for the court to undertake? Yes. But it's not just come in and say, I didn't see flooding at my house. You've got to come in and actually prove up. FEMA's determination is wrong. There was no flooding in my county. And then that would be okay. But that's not what they did. It was, I subjectively didn't know. And if every person in the country can come in and turn congressional statutes and federal regulations based on what they subjectively knew, then take all the Supreme Court cases and throw them away. Okay, your time's expired. Thank you, Your Honor.